UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **Doris Phillips and** <br> **Herbert Phillips** <br><br> **Plaintiffs,** <br><br> VS. <br><br> **United States of America** <br><br> **Defendant.** | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. SA-08-CA-0619-XR <br> ) <br> ) <br> ) <br> ) <br> ) |

**ORDER**

On this date, the Court considered Plaintiffs' motion to exclude the expert testimony of Tim L. Faulkenberry, M.D. After reviewing Plaintiffs' motion, Defendant's response, and Plaintiffs' subsequent reply, the Motion to Exclude/Limit the testimony of Tim L. Faulkenberry, M.D. is DENIED.

**BACKGROUND**

On April 6, 2005, Doris Phillips under went gastric bypass surgery together with a cholecystectomy[1] at the Wilford Hall Medical Center (WHMC) at Lackland Air Force Base, Texas. The days immediately following her operation were uneventful, and she was discharged from the hospital on April 8, 2005. During her hospital stay and prior to her discharge, Doris and her husband were given written instructions for her post-operative diet. The diet consisted of a progression through four different stages: Stage I included only sugar free clear liquids, Stage II included sugar

---

[1] This is "[t]he removal of the gallbladder by means of surgery." 2-CH ATTORNEYS' DICTIONARY OF MEDICINE 848 (2005).

free, nonfat liquids, Stage III included pureed solid foods, and Stage IV consisted of soft solid foods.

Less than two weeks after Doris was discharged from the hospital, she claims that she began to experience post-operative complications. Specifically, between April 2005 to June 2005, Doris was admitted to the emergency room at WHMC six times, each time complaining of chronic nausea, vomiting, and severe abdominal pain. Each time Doris was admitted she was primarily treated for her symptoms and for dehydration, and on several occasions, she underwent radiography[2] to determine if there was an anastomotic[3] leak. Three months after Doris was first admitted to WHMC for her alleged post-operative complications, she was seen by her personal physician, Kevin Comfort, M.D. On July 5, 2005, Doris was admitted to Northeast Baptist Hospital by Dr. Comfort. After conducting several tests, he diagnosed Doris with a gastroesophageal stricture.[4]

On July 29, 2008, Doris and Herbert Phillips filed a lawsuit against the United States of

---

[2]This is generally a type of x-ray picture. In this case, Doris underwent a barium contrast radiography. A barium contrast is:

> [a] substance opaque to x-rays, which is injected into a passage, organ, or tissue before taking an x-ray picture. The shadow of this material (since it does not transmit x-rays) outlines the passage, organ, etc. To use an analogy with ordinary light, the shadow of a glass tube would not clearly show the size of the lumen or caliber. However, if the tube is filled with ink and a shadow is thrown by means of a light, the lumen would be clearly seen as a dark shadow.

2-CH ATTORNEYS' DICTIONARY OF MEDICINE 5460 (2005).

[3]An anastomotic leak is where the contents of the intestines are not flowing properly due to a leak. *See* 1-A ATTORNEYS' DICTIONARY OF MEDICINE 6595 (2005).

[4]This involves "[an] abnormal narrowing of a passage, canal, or duct, as of the urethra, ureter, esophagus, etc., as a result of scar formation, inflammation, pressure, or overgrowth of tissue" that pertains to the stomach and the esophagus. 5-S ATTORNEYS' DICTIONARY OF MEDICINE 6920 (2005).

America generally alleging: (1) that "[WHMC] was negligent in the health care and treatment provided to [Doris during and after her operation], and that such negligence was a direct and proximate cause of the damages [she] suffered" related to her alleged post-operation complications and (2) the negligence was "the direct and proximate cause of the severe permanent damages suffered by the Plaintiffs," Doris and Herbert Phillips, including past and future hospital expenses, mental anguish, physical impairment, physical disfigurement, loss of consortium, and loss of pecuniary services. Pls. Original Complaint at 4–5. On July 7, 2009, Plaintiffs filed a motion to exclude or limit the testimony of Defendant's expert witness Tim L. Faulkenberry, M.D. This motion is the subject of the following analysis.

## EXPERT TESTIMONY

On June 18, 2009, the Defendant designated Tim L. Faulkenberry, M.D. as an expert witness. The Defendant claims that Dr. Faulkenberry is familiar with the "standards of care for bariatric surgery[5] and the standards of care for treatment of post-surgical complications." Def. Designation of Experts at 7. Based on a letter between Dr. Faulkenberry and the Plaintiffs' attorney, it seems that Dr. Faulkenberry will testify: (1) about the standard of care given to a person who undergoes a gastric bypass before, during, and after the procedure, (2) that the WHMC staff treating Doris met this standard of care, and (3) that WHMC's treatment was not the direct or proximate cause of Doris's alleged injuries. Def. Designation of Experts ex. A.

## PARTIES' ARGUMENTS

The Plaintiffs move to exclude or limit Dr. Faulkenberry's testimony because they claim: (1)

---

[5] This is "[s]urgery dealing with the management of obesity, [such] as a gastric bypass operation." 1-B ATTORNEYS' DICTIONARY OF MEDICINE 621 (2005).

3

he is unqualified, (2) his testimony would be unreliable, and (3) he concludes without evidence that WHMC did not deviate from the applicable standard of care when the staff concluded that Doris's symptoms were caused by her failure to follow the prescribed dietary plan. Pls. Mot. at 14. Defendant responds that the Plaintiffs' arguments regarding Dr. Faulkenberry's qualifications are incorrect because Dr. Faulkenberry has extensive experience in the area of bariatric surgery. Def. Resp. to Pls. Mot. at 4. His experience with bariatric surgery also makes his prospective testimony reliable. *Id.* As to the Plaintiffs' third argument, Defendant points to several pieces of evidence that it claims support Dr. Faulkenberry's conclusion. *Id.* at 5–6.

## ANALYSIS

Rule 702 provides for the admissibility of expert testimony if it will "assist the trier of fact to understand the evidence or to determine a fact in issue," and if a qualified witness provides testimony that (1) "is based upon sufficient facts or data," (2) "is the product of reliable principles and methods," and (3) "has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702. The Supreme Court's landmark case *Daubert v. Merrell Dow Pharmaceuticals, Inc.* provides the analytical framework regarding whether an expert's testimony is admissible pursuant to Federal Rule of Evidence 702. 509 U.S. 579 (1993). In *Daubert,* the Court explains that district courts must act as gatekeepers to ensure that expert testimony meets Rule 702's standard. *Id.* at 589. Thus, the Court must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597. The Plaintiffs argue that in its "gate-keeping" capacity the Court should either exclude or limit Dr. Faulkenberry's testimony for three reasons. Below the Court addresses each of these arguments.

4

## A. Expert Qualifications

The Plaintiffs contend that Dr. Faulkenberry is unqualified to provide expert testimony.[6] The Fifth Circuit has established that "[a]s long as some *reasonable indication* of qualifications is adduced, the court may admit the evidence without abdicating its gate-keeping function. After that, qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity." *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999) (emphasis added), *superseded by statute on other grounds as noted in Mathis v. Exxon Corp.,* 302 F.3d 448, 459 n. 16 (5th Cir. 2002).

To demonstrate Dr. Faulkenberry's qualifications, the Defendant shows that Dr. Faulkenberry's has experience with gastric bypass. Def. Resp. to Pls. Mot. at 4. Specifically, Dr. Faulkenberry's curriculum vitae states that he has experience in the area of bariatric surgery, which includes gastric bypass. *Id.* at ex. A. Notably, Dr. Faulkenberry is a member of both the American Society for Metabolic & Bariatric Surgery and the Texas Association of Bariatric Surgery. *Id.* It can be logically inferred that because he has an established history conducting surgery of this type he is uniquely familiar with the recovery process and possible post-operative complications that result from gastric bypass. Thus, Dr. Faulkenberry's experience conducting bariatric surgery, specifically gastric bypass, provide this Court with a "reasonable indication" of Dr. Faulkenberry's qualifications to serve as an expert witness for the Defendant in this case.

---

[6]The Plaintiffs argue that Dr. Faulkenberry is unqualified to give expert testimony, but do not develop this issue by providing arguments explaining why he is unqualified. However, the Court will address this issue anyway given that the Plaintiffs raise the issue in the first paragraph of the "Argument and Analysis" section of their motion.

### B. Reliability of Expert Testimony

The Plaintiffs' second argument is that portions of Dr. Faulkenberry's prospective testimony regarding the applicable standard of care and causation would not be reliable. Typically, when evaluating an expert's testimony that relies on a scientific technique or methodology, the Court looks at several nonexclusive factors, including whether the scientific technique has been tested, subjected to peer review and publication, and generally accepted in the relevant scientific community. *Daubert,* 509 U.S. at 593–94. In *Kumho Tire Co., Ltd. v. Carmichael*, the Court reaffirmed *Daubert*'s central holding that a trial judge's "gatekeeper" function applies to *all* expert testimony, regardless of whether such testimony is based upon scientific, technical, or other specialized knowledge. 526 U.S. 137, 141, 147–49 (1999). However, the *Kumho* Court emphasized that "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* at 150. In some cases, even cases involving nonscientific techniques, the factors may be pertinent. While in other cases, "the relevant reliability concerns may focus upon personal knowledge or experience." *Id.* Whether *Daubert*'s factors are relevant or not, the "reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* at 153.

Here, the Plaintiffs attack the reliability of Dr. Faulkenberry's proposed testimony because it would not be based on "medical or scientifically reliable evidence." Pls. Mot. at 10. This argument seems to frame the inquiry around the traditional *Daubert* factors typically used to evaluate expert testimony based on a scientific methodology. However, the Defendant does not claim that Dr. Faulkenberry's testimony would be based on a scientific methodology. The Defendant claims that the testimony would be based solely on his experience. Thus, the Court concludes that *Daubert*

factors typically used to evaluate expert testimony do not apply in this case, and the Court will evaluate the reliability of his prospective testimony based on his personal knowledge and experience. *See Kumho Tire Co.,* 526 U.S. at 150.

As explained above, Dr. Faulkenberry has experience conducting bariatric surgery, which includes gastric bypass. Therefore, he is uniquely acquainted with the standard of care that doctors and hospital staff should use when treating a patient who undergoes a gastric bypass before, during, and after the procedure. The Court can find no reason why and the Plaintiffs have failed to articulate a reason why Dr. Faulkenberry's testimony is unreliable. Thus, based on Dr. Faulkenberry's experience, the Court concludes that he has the knowledge and experience to serve as Defendant's expert witness and testify about the applicable standard of care and causation.

### C.  Sufficient Factual Basis

Plaintiffs also argue that Dr. Faulkenberry concludes without *any* evidentiary support that the WHMC staff did not violate its standard of care when it "assumed the cause of [Doris's complications] was her failure to comply with the dietary instructions provided to her prior to and following her gastric bypass surgery." Pls. Mot. at 12. While the Court will not evaluate Dr. Faulkenberry's conclusions, *see Daubert*, 526 U.S. at 595, the Court will examine whether there is "sufficient facts or data" to support Dr. Faulkenberry's conclusion so as to prevent it from being speculative. Fed.R.Evid.702. As the Defendant notes, there is some evidence that Doris did not follow dietary guidelines after a previous operation and at least one document where her doctor notes that she did not follow dietary guidelines after her gastric bypass. Def. ex. C and Pls. ex. 1 at 10. Thus, there is evidence to support Dr. Faulkenberry's conclusion, and the Court cannot exclude all or even a part of his testimony based on a lack of evidentiary support.

**CONCLUSION**

For the foregoing reasons, it is ORDERED that Plaintiffs' Motion to Exclude/Limit the testimony of Tim L. Faulkenberry, M.D. (docket no. 19) is DENIED.

SIGNED this 13th day of October, 2009.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE